IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| BILLY HUMPHRIES and CYNDI HUMPHRIES, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | | |
| v. | | Case No. 1:18-cv-224 |
| HARLEY-DAVIDSON FINANCIAL SERVICES, INC., | | |
| Defendant. | | |

**PLAINTIFFS' COMPLAINT**

Plaintiffs, BILLY HUMPHRIES ("Billy") and CYNDI HUMPHRIES ("Cyndi"), (collectively "Plaintiffs"), through their attorney, Hormozdi Law Firm, LLC, alleges the following against Defendant, HARLEY-DAVIDSON FINANCIAL SERVICES, INC. ("Defendant"):

**INTRODUCTION**

1. Count I of Plaintiffs' Complaint is based on the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2. Count II of Plaintiffs' Complaint is based on the North Carolina Debt Collection Act, N. C. Gen. Stat. § 75-50, *et seq.* ("NCDCA").

**JURISDICTION AND VENUE**

3. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 28 U.S.C. § 1367 grants this court supplemental jurisdiction over the state claims contained within.

4. This Court has federal question jurisdiction because this case arises out of violations of federal law. 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

1

5. Venue and personal jurisdiction in this District are proper because Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

**PARTIES**

6. Plaintiffs are natural persons residing in Mooresboro, Cleveland County, North Carolina.

7. Plaintiffs are consumers as that term is defined by the NCDCPA.

8. Plaintiffs are persons as that term is defined by the TCPA.

9. Plaintiffs allegedly owe a debt as that term is defined by NCDCPA.

10. Defendant is a collection agency as that term is defined by the NCDCPA.

11. Defendant attempted to collect a consumer debt from Plaintiffs.

12. Defendant is a credit servicing corporation located in Carson City, Nevada.

13. Defendant's business includes, but is not limited to, collecting on unpaid, outstanding account balances.

14. When an unpaid, outstanding account is placed with Defendant it is assigned a file number.

15. The principal purpose of Defendant's business is the collection of debts allegedly owed to Defendant.

16. During the course of its attempts to collect debts allegedly owed, Defendant sends to alleged debtors bills, statements, and/or other correspondence, via the mail and/or electronic mail, and initiates contact with alleged debtors via various means of telecommunication, such as by telephone and facsimile.

17. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

18. Defendant is attempting to collect an alleged debt from Plaintiffs.

19. Plaintiffs' alleged debt, arises from transactions for personal, family, and household purposes.

20. Within the past year of Plaintiffs filing this Complaint, Defendant began calling Cyndi on Cyndi's cellular telephone number at xxx-xxx-8502.

21. Within the past year of Plaintiffs filing this Complaint, Defendant began calling Billy on Billy's cellular telephone number at xxx-xxx-8530.

22. Defendant calls Plaintiffs from 800-757-1744, which is one of Defendant's telephone numbers.

23. On or around June 12, 2018, Cyndi spoke with one of Defendant's collectors and requested Defendant stop calling her.

24. On or around June 18, 2018, Billy spoke with one Defendant's collectors and requested Defendant stop calling him.

25. Despite Plaintiffs' requests for Defendant to stop calling, Defendant continued to place collection calls to Plaintiffs' cellular telephones.

26. None of the telephone calls Defendant made to Plaintiffs were for an emergency purpose.

27. Prior to calling Plaintiffs' cellular telephones, Defendant knew the numbers were cellular telephone numbers.

28. All of the calls Defendants made to Plaintiffs' cellular telephones resulted in Plaintiffs incurring a charge for incoming calls.

29. Within 4 years of Plaintiffs filing this Complaint, Defendant used an automatic telephone dialing system to call Plaintiffs' cellular telephones.

30. Within 4 years of Plaintiffs filing this Complaint, Defendant left pre-recorded voicemail messages for Plaintiffs on Plaintiffs' cellular telephones.

31. Within 4 years of Plaintiffs filing this Complaint, Defendant left voicemail messages from live representatives for Plaintiffs on Plaintiffs' cellular telephones.

32. The telephone dialer system Defendant used to call Plaintiffs' cellular telephones has the capacity to store telephone numbers.

33. The telephone dialer system Defendant used to call Plaintiffs' cellular telephones has the capacity to call stored telephone numbers automatically.

34. The telephone dialer system Defendant used to call Plaintiffs' cellular telephones has the capacity to call stored telephone numbers without human intervention.

35. The telephone dialer system Defendant used to call Plaintiffs' cellular telephones has the capacity to call telephone numbers in sequential order.

36. The telephone dialer system Defendant used to call Plaintiffs' cellular telephones has the capacity to call telephone numbers randomly.

37. The telephone dialer system Defendant used to call Plaintiffs' cellular telephones selects telephone numbers to be called according to a protocol or strategy entered by Defendant.

38. The telephone dialer system Defendant used to call Plaintiffs' cellular telephones simultaneously calls multiple consumers.

39. While Defendant called Plaintiffs' cellular telephones, Plaintiffs' cellular telephone lines were unavailable for legitimate use during the unwanted calls.

40. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiffs' cellular telephones without prior express consent, Defendant caused Plaintiffs harm and/or injury such that Article III standing is satisfied in at least the following, if not

more, ways:

   a. Invading Plaintiffs' privacy;

   b. Electronically intruding upon Plaintiffs' seclusion;

   c. Intrusion into Plaintiffs' use and enjoyment of Plaintiffs' cellular telephones;

   d. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiffs has as to complete ownership and use of Plaintiffs' cellular telephones; and

   e. Causing Plaintiffs to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

## COUNT I
## DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

41. Defendant violated the TCPA by:

   a. Placing non-emergency telephone calls to Plaintiffs' cellular telephones using an automatic telephone dialing system and/or pre-recorded or artificial voice in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiffs, BILLY HUMPHRIES and CYNDI HUMPHRIES, respectfully requests judgment be entered against Defendant, HARLEY-DAVIDSON FINANCIAL SERVICES, INC., for the following:

42. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiffs are entitled to and requests $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

43. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs are entitled to and requests treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47

5

U.S.C. § 227(b)(3)(C).

44. Plaintiffs are entitled to and seeks injunctive relief prohibiting such conduct in the future.

45. Any other relief that this Honorable Court deems appropriate.

## COUNT II:
## DEFENDANT VIOLATED THE
## NORTH CAROLINA DEBT COLLECTION PRACTICES ACT

41. Plaintiffs repeat and re-allege paragraphs 1-40 of Plaintiffs' Complaint as the allegations in Count II of Plaintiffs' Complaint.

42. Defendant violated the North Carolina Debt Collection Practices Act based on the following:

    a. Defendant violated § 75-52 of the North Carolina General Statute when it used conduct the natural consequence of which is to oppress, harass, or abuse any person in connection with the attempt to collect the alleged debt, when Defendant continued to place collection calls to Plaintiffs after Plaintiffs requested for Defendant to stop calling them; and

    b. Defendant violated § 75-52(3) of the North Carolina General Statute by causing a telephone to ring or engaged a person in a telephone conversation with such frequency as to be unreasonable or constitute harassment to the person under the circumstances, when Defendant continued to place collection calls to Plaintiffs after Plaintiffs requested for Defendant to stop calling them.

43. Defendant's actions constituted an unfair act by engaging in the above-referenced misconduct in or affecting commerce because Defendant is collecting on a consumer debt and proximately caused Plaintiffs' injuries.

WHEREFORE, Plaintiffs, BILLY HUMPHRIES and CYNDI HUMPHRIES, respectfully

requests judgment be entered against Defendant, HARLEY-DAVIDSON FINANCIAL SERVICES, INC., for the following:

44. Actual damages and civil penalties of not less than $500.00 nor greater than $4,000.00 per violation pursuant to North Carolina General Statute § 75-56(b);

45. Punitive damages pursuant to North Carolina General Statute § 75-56(c);

46. Costs and reasonable attorneys' fees; and

47. Any other relief that this Honorable Court deems appropriate.

Respectfully submitted,

August 6, 2018

By: /s/ Shireen Hormozdi
Shireen Hormozdi
Hormozdi Law Firm, PLLC
North Carolina Bar No. 47432
1770 Indian Trail Road, Suite 175
Norcross, GA 30093
Tel: 678–395-7795
Cell: 678-960-9030
Fax: 866-929-2434
shireen@agrusslawfirm.com
shireen@norcrosslawfirm.com